## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **DISABILITY RIGHTS NEW JERSEY,** | : | |
| | : | **Case No.** |
| | : | |
| **Plaintiff,** | : | **Judge:** |
| | : | |
| **v.** | : | **Magistrate Judge:** |
| | : | |
| **ALLIANCE HC 11 LLC d/b/a** | : | |
| **WOODLAND BEHAVIORAL** | : | |
| **AND NURSING CENTER** | : | |
| **99 Mulford Road** | : | |
| **Andover, New Jersey 07821** | : | |
| | : | |
| **Defendant.** | | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## I.    INTRODUCTION

1.    This action seeks to enjoin Alliance HC 11 LLC, d/b/a Woodland Behavioral and Nursing Center ("Woodland"), from continuing to violate federal laws that grant Plaintiff Disability Rights New Jersey ("Disability Rights NJ") reasonable unaccompanied access to residents and records for the purpose of fulfilling its mandate as the protection and advocacy system for people with disabilities in New Jersey.

2.      Due to Defendants' continuing violation of federal law, Plaintiff Disability Rights NJ seeks declaratory and preliminary and permanent injunctive relief to enjoin Defendant from denying reasonable unaccompanied access to individuals with disabilities who reside at Woodland.

3.      Disability Rights NJ files suit and seeks relief as described after making repeated efforts to resolve this matter with the Defendants.

4.      Plaintiff Disability Rights New Jersey also seeks attorneys' fees and costs, and any other available relief.

5.      Each paragraph of this Complaint incorporates all others without specific restatement.

## II.             JURISDICTION AND VENUE

6.      Jurisdiction is vested in this Court as this case raises a question of general federal law, 28 U.S.C. § 1331.

7.      Plaintiff's cause of action arises under the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. § 10801 *et seq.*; the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("PADD Act"), 42 U.S.C. § 15041 *et seq.*; and the Protection and Advocacy for Individual Rights Act ("PAIR Act"), 29 U.S.C. § 794e. Costs may be awarded pursuant to Fed. R. Civ. P. 54.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b). Defendant is located in this district, and the events and omissions complained of occurred in this district.

### III.            PARTIES

9.      Plaintiff Disability Rights NJ is a non-profit corporation duly incorporated in the state of New Jersey.  Disability Rights New Jersey is the designated protection and advocacy system for the State of New Jersey.

10.     Plaintiff Disability Rights NJ files this Complaint in its own name to redress injuries to itself in fulfilling its mandate to protect and advocate for the rights of people with disabilities in New Jersey.

11.     Plaintiff Disability Rights NJ's office is located in Trenton, New Jersey.

12.     Congress established the protection and advocacy ("P&A") system in 1975 to protect and advocate for the rights of persons with developmental disabilities, and reauthorized the system in the Developmental Disabilities Assistance and Bill of Rights Act of 2000 (the "PADD Act"). 42 U.S.C. § 15041 *et seq.* Congress provided P&A systems with the authority to investigate incidents of abuse and neglect against individuals with developmental disabilities and pursue legal, administrative, and other remedies on their behalf. 42 U.S.C. § 15043(a).

13.     Congress thereafter expanded the scope of the P&A system to provide protection and advocacy services to all persons with disabilities. The Protection and

Advocacy for Individuals with Mental Illness Act of 1986 (the "PAIMI Act") provides for the protection of rights of individuals with mental illness, 42 U.S.C. § 10801 *et seq.*; and the Protection and Advocacy of Individual Rights Program (the "PAIR Act") was created to protect the rights of all other individuals with disabilities who are not covered under the PADD and PAIMI Acts. 29 U.S.C. § 794e *et seq.*

14.     Pursuant to these laws, Plaintiff Disability Rights NJ has a federal mandate to protect and advocate for the rights of persons with disabilities in New Jersey, including people with disabilities who are institutionalized in facilities such as Woodland.

15.     Among other activities, Plaintiff Disability Rights NJ travels throughout the state to investigate allegations of abuse and neglect in facilities.

16.     Defendant Woodland, is a limited liability corporation created under and governed by the laws of the State of New Jersey.

17.     Defendant Woodland operates a skilled nursing facility that is licensed by the New Jersey Department of Health that is located at 99 Mulford Road, Andover, New Jersey 07821.

18.     Hundreds of people with disabilities are served by Defendant's licensed residential facility.

19.     Upon information and belief, many of the residents who reside at Defendant's facility are under guardianship.

20.     Individuals with physical or mental impairments that substantially limit one or more major life activities of such individuals are institutionalized at Defendant Woodland.

21.     Individuals who are institutionalized at Woodland receive skilled nursing services.

22.     Defendant Woodland is a facility as defined in 42 U.S.C. § 10802(3) and 42 C.F.R. § 51.2.

23.     Defendant is also a location, as provided in 42 U.S.C. § 15043(a)(2)(H), and a service provider, as provided in 42 C.F.R. § 1326.27(c), because services, supports, and other assistance are provided there to individuals with disabilities.

### IV.          STATEMENT OF FACTS

24.     In April 2020, The New York Times published a story indicating that a high percentage of residents at Woodland, then known as Andover II, had died from COVID-19 and bodies were being stored on site.  *See After Anonymous Tip, 17 Bodies Found at Nursing Home Hit by Virus*, N.Y. Times, Apr. 15, 2020, *available at* https://www.nytimes.com/2020/04/15/nyregion/coronavirus-nj-andover-nursing-home -deaths.html

25.     Disability Rights NJ requested information from nursing facilities over the course of 2020 and learned that Woodland housed a disproportionately high number of residents with serious mental illness and traumatic brain injury.

26.     On or around July 12, 2021, Disability Rights NJ wrote to Woodland, notified the administrator of its intent to monitor, and provided an explanation and references for Disability Rights NJ's legal authority to do so.

27.     On July 26 and August 17, 2021, Disability Rights NJ staff conducted initial monitoring visits at Woodland.  This monitoring activity raised concerns that residents that needed specialized services for serious mental illness and developmental disability were inappropriately placed at the facility.

28.     Disability Rights NJ began collecting Preadmission Screening and Resident Review (PASRR) information from the state suspecting there was an issue with the unnecessary placement of disabled residents in long term care facilities.

29.     As monitoring activities continued, Disability Rights NJ became aware of additional reports of serious and acute health and safety violations.

30.     The New Jersey Department of Health issued a "Notice of Violations, Corrective Action, and State Monitoring" dated February 10, 2022 to Woodland.

31.     The Department of Health notice documented numerous instances of verbal abuse of patients by staff.  The report also documented numerous serious instances of neglect, including an instance where a patient was left soiled in feces for more than ten hours and another instance where staff failed to assist a resident who called for help due to a stuck catheter.  The report also identified numerous instances in which staff failed to provide any life saving emergency response, including an

instance where staff failed to initiate CPR, call 911, or utilize a defibrillator after finding a 55 year old resident unresponsive.  The report also identified serious deficiencies in COVID prevention and treatment protocols, unsecured storage of dangerous medications, and that the facility failed to maintain sufficient levels of properly trained and qualified staff.

32.    Based on the detailed instances of abuse and neglect reported in the New Jersey Department of Health notice, Disability Rights NJ determined there was probable cause to suspect that all residents at Woodland have been subject to ongoing abuse, neglect, and rights violations.

33.    Plaintiff Disability Rights New Jersey provided Defendant Woodland with information regarding its federal and state access authority to "unaccompanied access to residents at all times necessary to conduct a full investigation of an incident of abuse or neglect."

34.    Plaintiff Disability Rights NJ's authority to speak confidentially with individuals with disabilities is an important oversight component for facilities like Woodland.

35.    Initially, Defendant Woodland agreed to allow Disability Rights NJ access to the facility, but later Woodland administrators and staff attempted to limit Disability Rights NJ's access to the facility and interfered with their ability to speak confidentially with individuals with disabilities at the facility.

36.    On February 18, 2022, Disability Rights NJ Director of Investigations and Monitoring Gloria Jill Hoegel , Disability Rights NJ Senior Advocate Elena Kravitz, and Disability Rights NJ Staff Advocate Mary Ciallela visited the Woodland facility as part of Disability Rights NJ's investigation.

37.    During the visit, Disability Rights NJ staff witnessed an instance of staff verbal abuse of a resident who sought assistance.  Woodland staff dismissed the resident's concerns as attention seeking.  The same staff member confronted the Disability Rights NJ monitoring team as they were leaving the facility, addressing Disability Rights NJ staff with a raised voice while claiming that their presence was upsetting people and falsely claiming that members of the Disability Rights NJ monitoring team were telling staff to "sharpen up their resumes".

38.    On February 20, 2022, a Disability Rights NJ team which included Executive Director Gwen Orlowski, made another in person visit to the facility.

39.    The team was met at the door by an individual who identified himself as "Mutty" Scheinbaum, who stated that he was one of the owners of the facility.  The Disability Rights NJ team introduced themselves, provided photo identification, and explained the purpose and authority for the visit.

40.    Mr. Scheinbaum delayed the Disability Rights NJ investigative team for two hours.  Mr. Scheinbaum insisted that the team go directly to his office without speaking to residents.  Mr. Scheinbaum indicated that the team needed to stay in his

office while he spoke with staff and his attorney.  After twenty minutes waiting in the

office, Mr. Scheinbaum returned as the team was attempting to leave.

41.     Mr. Scheinbaum challenged Disability Rights NJ's access authority, even

though the team had previously visited the facility and had provided written

correspondence to Woodland informing the facility of Disability Rights NJ's access

authority. Mr. Scheinbaum demanded that the Disability Rights NJ team remain

confined to his office and threatened to call the police if they left.  Mr. Scheinbaum

told Disability Rights NJ's team that his attorney advised him that Disability Rights

NJ's team did not have authority to monitor, and that Disability Rights NJ's authority

to investigate was limited.  Mr. Scheinbaum claimed that he could deny access

authority due to COVID, and he claimed that the Disability Rights NJ team was not

who they said they were, despite the fact that they each presented personal

identification.

42.     During the course of this confrontation, Disability Rights NJ's Legal

Director Michael Brower provided November 2021 regulatory guidance from the

Centers for Medicare & Medicaid which stated that nursing home facilities must

provide "immediate access" by any representative of the protection and advocacy

system regardless of the COVID public health emergency.

43.     Despite this, Mr. Scheinbaum continued to deny access to the facility and

demanded that Disability Rights NJ speak to his attorney, Peter Slocum.  Disability

Rights NJ staff communicated with Mr. Slocum via telephone and provided him with legal authority on Disability Rights New Jersey's access authority. At the conclusion of the discussion, Mr. Slocum acknowledged Disability Rights NJ's access rights and stated that he would instruct his client not to interfere further with the investigation. Mr. Scheinbaum then allowed the Disability Rights NJ team to begin their work, two hours after they had arrived at the facility, but followed within sight of the team throughout the visit.

44.     On February 23, 2022, a Disability Rights NJ team which included Legal Director Michael Brower and Elena Kravitz made another in person visit to the facility. As the Disability Rights NJ team was conducting interviews with residents, they were approached by two men who identified themselves as Joey and Michael, who stated that they were owners and administrators at the facility. Joey and Michael asked Disability Rights NJ staff to go to the third floor of the facility and to intervene in what they described as a behavioral crisis, and to explain to residents that they were not allowed to leave the facility. Disability Rights NJ declined to do so, but accompanied Joey and Michael to the third floor to observe the situation. On the third floor, Joey and Michael were joined by a member of the nursing staff who told Disability Rights NJ that their presence was disruptive to residents because it made them want to leave the facility. Woodland staff claimed that Woodland staff were "like family" to the residents and knew how to interact with them. Woodland staff

demanded that Disability Rights NJ agree not to engage in any further interactions or interviews with residents without Woodland staff present.

45.     On March 1, 2022, a Disability Rights NJ team which included Elena Kravitz made another in person visit to the facility.  As part of the visit, Ms. Kravitz interviewed residents and then took photographs of an unoccupied shower facility. Soon after, Ms. Kravitz was confronted by Mr. Scheinbaum, who raised his voice in anger and falsely accused Disability Rights NJ staff of photographing residents, upsetting staff, and disrupting the facility.  Mr. Scheinbaum and a second administrator who identified himself as "Michael" physically intimidated Ms. Kravitz by yelling at her and leaning towards her as though they were going to physically strike her.  Michael then insisted that Disability Rights NJ staff accompany him to the facility's administrative office, where other administrators were also present.  Ms. Kravitz left the building to contact her supervisor, Ms. Hoegel.  When she returned to the facility a few minutes later to complete the visit, Mr. Scheinbaum continued to keep Disability Rights NJ staff within line of sight surveillance.

46.     On March 2, 2022, a Disability Rights NJ team which included Elena Kravitz made another in person visit to the facility.  As Ms. Kravitz was communicating with a resident, she overheard a second resident complain that a nurse had given her the wrong dose of medication.  The nurse then confronted Ms. Kravitz and yelled "This is all your fault! They were never like this before you came here.

Everything is because of you.  I can't do this anymore!"  The nurse then refused to dispense medication while Disability Rights NJ staff were present.

47.    Woodland has engaged in a pattern and practice of impeding Disability Rights NJ's access to the facility and to residents.

48.    Woodland's attempts to bar Disability Rights NJ staff from speaking with residents confidentially and privately and its ongoing practice of confronting and interrupting Disability Rights NJ staff has stymied the ability of Disability Rights NJ to collect candid information from residents on the care they are receiving, violations of their rights, and whether or not they are subject to ongoing abuse or neglect.

49.    The conduct has interfered with and impeded Disability Rights NJ's ability to investigate abuse and neglect of residents with disabilities at the facility.

50.    At all times, Plaintiff Disability Rights New Jersey cooperatively provided Woodland with information about the purpose and reasonableness of Plaintiff Disability Rights NJ's investigative activities, the federal laws regarding Plaintiff Disability Rights NJ's authority to have reasonable unaccompanied access to observe and speak with individuals at the facility.

**V.        LEGAL CLAIMS**

**A.    First Claim for Relief: Based on Violation of the PAIMI Act and Implementing Regulations**

51.    As the designated protection and advocacy system for individuals with disabilities in New Jersey, Plaintiff Disability Rights NJ has access to facilities in New Jersey providing care or treatment to individuals with mental illness. 42 U.S.C. § 10805(a)(3).

52.    Plaintiff Disability Rights NJ is charged to investigate instances of abuse and neglect of individuals with mental illness.  42 C.F.R. § 51.42(b).

53.    Plaintiff Disability Rights NJ is authorized to have reasonable unaccompanied access to public and private facilities and programs in the State, which render care or treatment for individuals with mental illness, and to all areas of the facility which are used by residents or are accessible to residents.  42 C.F.R. § 51.42(b).

54.    The P&A system shall have reasonable unaccompanied access to residents at all times necessary to conduct a full investigation of an incident of abuse or neglect. Residents include adults or minors who have legal guardians or conservators. 42 C.F.R. § 51.42(b) and (d).

55.    Unaccompanied access to residents includes the opportunity to meet and communicate privately with individuals regularly, both formally and informally, by telephone, mail and in person.  42 C.F.R. § 51.42(d).

56.    The P&A system also has: access to the records of any of the following individuals with mental illness:

**a)**  An individual who is a client of the P&A system if authorized by that individual or the legal guardian, conservator or other legal representative.

**b)**  An individual, including an individual who has died or whose whereabouts is unknown to whom all of the following conditions apply:

    1)  The individual, due to his or her mental or physical condition, is unable to authorize the P&A system to have access.

    2)  The individual does not have a legal guardian, conservator or other legal representative, or the individual's guardian is the State or one of its political subdivisions; and

    3)  A complaint or report has been received and the P&A system has determined that there is probable cause to believe that the individual has been or may be subject to abuse or neglect.

**c)**  An individual who has a legal guardian, conservator, or other legal representative, with respect to whom a complaint or report has been received by the P&A system and with respect to whom the P&A system has determined that there is probable cause to believe that the health or safety of the individual is in serious and immediate jeopardy, whenever all of the following conditions exists:

    4)  The P&A system has made a good faith effort to contact the representative upon prompt receipt of the representative's name and address;

    5)  The P&A system has made a good faith effort to offer assistance to the representative to resolve the situation; and

    6)  The representative has failed or refused to act on behalf of the individual. 42 C.F.R. § 51.41(b)

57.  Plaintiff Disability Rights NJ became aware of incidents of abuse and neglect of residents at Woodland arising out of the New Jersey Department of Health February 2022 report.  Such incidents provide Disability Rights NJ with probable

cause to believe that abuse and neglect has occurred or is occurring at Woodland. The additional access is necessary to conduct a full investigation of abuse and neglect.

58.    Disability Rights NJ requested access to Woodland, but Woodland has significantly limited requested access. Further, given the risk of abuse and neglect, Disability Rights NJ has probable cause to believe that the health and safety of the residents at Woodland are in serious and immediate jeopardy.

59.    Defendant Woodland has interfered with Plaintiff Disability Rights NJ's attempts to conduct site visits and interview residents at the facility.

60.    Defendants' refusal to provide Plaintiff Disability Rights NJ with reasonable unaccompanied access to the facility, residents, and records violates the PAIMI Act and its implementing regulations.

61.    Defendants' violation of the PAIMI Act and its implementing regulations frustrates and interferes with Plaintiff Disability Rights NJ's federal mandate to protect people with disabilities in New Jersey; to provide legal advocacy for people with disabilities; to conduct an investigation of the facility, and to determine whether corrective action should be taken.

62.    Defendants' violation of the PAIMI Act and its implementing regulations frustrates the rights of individuals institutionalized at Woodland to have access to a meaningful and effective protection and advocacy system.

63.     Pursuant to 42 U.S.C. § 10805(a)(1)(B), Plaintiff Disability Rights NJ is authorized to pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in New Jersey

64.     Plaintiff Disability Rights NJ is entitled to relief under 42 U.S.C. § 10805(a)(3) and 42 C.F.R. § 51.41(c).

## B.   Second Claim for Relief: Based on the Violation of the PADD Act, Implementing Regulations, and 42 U.S.C. § 1983

65.     Plaintiff Disability Rights NJ is authorized to have access at reasonable times to any individual with a developmental disability in a location in which services, supports, and other assistance are provided to such an individual. 42 U.S.C. § 15043(a)(2)(H).

66.     Plaintiff Disability Rights NJ is authorized to have unaccompanied access to individuals with developmental disabilities at all times necessary to conduct a full investigation of an incident of abuse and neglect. 45 C.F.R. § 1326.27(b).

67.     Access to individuals with developmental disabilities includes the opportunity to meet and communicate privately with individuals regularly, both formally and informally, by telephone, mail, and in person.  45 C.F.R. § 1326.27(d).

68.     A P&A system shall have reasonable unaccompanied access to public and private service providers, programs in the State, and to all areas of the service provider's premises that are used by individuals with developmental disabilities or are

accessible to them. Such access shall be provided without advance notice and made available immediately upon request. This authority shall include the opportunity to interview any individual with developmental disability, employee, or other persons, including the person thought to be the victim of such abuse, who might be reasonably believed by the system to have knowledge of the incident under investigation. 45 C.F.R. § 1326.27(b).

69.    The P&A system also has access to the records of individuals with developmental disabilities under the following circumstances:

**a)**  (1) If authorized by an individual who is a client of the system, or who has requested assistance from the system, or by such individual's legal guardian, conservator or other legal representative.

**b)**  (2) In the case of an individual to whom all of the following conditions apply:

1)      (i) The individual, due to his or her mental or physical condition, is unable to authorize the system to have access;

2)      (ii) The individual does not have a legal guardian, conservator or other legal representative, or the individual's guardian is the State (or one of its political subdivisions); and

3)      (iii) The individual has been the subject of a complaint to the P&A system, or the P&A system has probable cause (which can be the result of monitoring or other activities including media reports and newspaper articles) to believe that such individual has been subject to abuse and neglect.

**c)**  (3) In the case of an individual, who has a legal guardian, conservator, or other legal representative, about whom a complaint has been received by the system or, as a result of monitoring or other activities, the system has determined that there is probable cause to believe that the individual with developmental disability has been subject to abuse or neglect, whenever the following conditions exist:

1)      (i) The P&A system has made a good faith effort to contact the legal guardian, conservator, or other legal representative upon prompt receipt (within the timelines set forth in paragraph (c) of this section) of the contact information (which is required to include but not limited to name, address, telephone numbers, and email address) of the legal guardian, conservator, or other legal representative;

2)      (ii) The system has offered assistance to the legal guardian, conservator, or other legal representative to resolve the situation; and

3)      (iii) The legal guardian, conservator, or other legal representative has failed or refused to provide consent on behalf of the individual.

4)      (4) If the P&A determines there is probable cause to believe that the health or safety of an individual is in serious and immediate jeopardy, no consent from another party is needed. 45 C.F.R. § 1326.25

70.     Plaintiff Disability Rights NJ became aware of serious incidents of abuse and neglect at Woodland arising out of the New Jersey Department of Health February 2022 report. Such incidents provide Disability Rights NJ with probable cause to believe that abuse and neglect has occurred or is occurring at Woodland. The additional information requested is necessary to conduct a full investigation of abuse and neglect.

71.     Disability Rights NJ has probable cause to believe that the health and safety of individuals with disabilities at Woodland are in serious and immediate jeopardy.

72.     Defendant Woodland refused Disability Rights NJ's attempts to conduct site visits and interview residents at the facility.

73.     Defendants' refusal to allow Plaintiff Disability Rights NJ reasonable unaccompanied access to the facility, residents, and records at Woodland violates the PADD Act and its implementing regulations.

74.     Defendants' violation of the PADD Act and its implementing regulations frustrates and interferes with Plaintiff Disability Rights NJ's federal mandate to protect people with disabilities in New Jersey; provide legal advocacy for people with disabilities; determine whether an investigation by Plaintiff Disability Rights NJ should be conducted; and determine whether corrective action should be taken.

75.     Defendants' violation of the PADD Act and its implementing regulations frustrates the rights of individuals with disabilities institutionalized at Woodland to have access to a meaningful and effective protection and advocacy system.

76.     Pursuant to 42 U.S.C. § 15043(a)(2)(A)(i), Plaintiff Disability Rights NJ is authorized to pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of such individuals

within New Jersey who are or who may be eligible for treatment, services, or habilitation.

77.     Plaintiff Disability Rights NJ is entitled to relief under 42 U.S.C. § 15043(a)(2)(H), and 45 C.F.R. § 1326.27(d).

**C.   Third Claim for Relief: Based on Violation of the PAIR Act, Implementing Regulations, and 42 U.S.C. § 1983**

78.     The PAIR Act provides Plaintiff Disability Rights NJ with the authority to serve individuals with disabilities who are not otherwise eligible for protection and advocacy services under either the PADD Act or PAIMI Act. 29 U.S.C. § 794e(a)(1).

79.     The PAIR Act incorporates the same general authorities of access as are found in the PADD Act.  29 U.S.C. § 794e(f)(2).

80.     Plaintiff Disability Rights NJ is authorized to have access at reasonable times to any individual with a disability in a location in which services, supports, and other assistance are provided to such an individual.  42 U.S.C. § 15043(a)(2)(H).

81.     Plaintiff Disability Rights NJ is authorized to have unaccompanied access to individuals with a disability including, but not limited to, the opportunity to meet and communicate privately with individuals regularly, both formally and informally, by telephone, mail, and in person.  45 C.F.R. § 1326.27(d).

82.     A P&A system shall have reasonable unaccompanied access to public and private service providers, programs in the State, and to all areas of the service provider's premises that are used by individuals with developmental disabilities or are

accessible to them. Such access shall be provided without advance notice and made available immediately upon request. This authority shall include the opportunity to interview any individual with developmental disability, employee, or other persons, including the person thought to be the victim of such abuse, who might be reasonably believed by the system to have knowledge of the incident under investigation. 45 C.F.R. § 1326.27(b).

83.     The P&A system also has access to the records of individuals with developmental disabilities under the following circumstances:

**a)**    (1) If authorized by an individual who is a client of the system, or who has requested assistance from the system, or by such individual's legal guardian, conservator or other legal representative.

**b)** (2) In the case of an individual to whom all of the following conditions apply:

1) (i) The individual, due to his or her mental or physical condition, is unable to authorize the system to have access;

2) (ii) The individual does not have a legal guardian, conservator or other legal representative, or the individual's guardian is the State (or one of its political subdivisions); and

3)     (iii) The individual has been the subject of a complaint to the P&A system, or the P&A system has probable cause (which can be the result of monitoring or other activities including media reports and newspaper articles) to believe that such individual has been subject to abuse and neglect.

**c)** (3) In the case of an individual, who has a legal guardian, conservator, or other legal representative, about whom a complaint has been received by the

system or, as a result of monitoring or other activities, the system has determined that there is probable cause to believe that the individual with developmental disability has been subject to abuse or neglect, whenever the following conditions exist:

1)      (i) The P&A system has made a good faith effort to contact the legal guardian, conservator, or other legal representative upon prompt receipt (within the timelines set forth in paragraph (c) of this section) of the contact information (which is required to include but not limited to name, address, telephone numbers, and email address) of the legal guardian, conservator, or other legal representative;

2)      (ii) The system has offered assistance to the legal guardian, conservator, or other legal representative to resolve the situation; and

3)      (iii) The legal guardian, conservator, or other legal representative has failed or refused to provide consent on behalf of the individual.

d)  (4) If the P&A determines there is probable cause to believe that the health or safety of an individual is in serious and immediate jeopardy, no consent from another party is needed. 45 C.F.R. § 1326.25

84.      Plaintiff Disability Rights NJ became aware of serious instances of abuse and neglect at Woodland arising out of the New Jersey Department of Health February 2022 report. Such incidents provide Disability Rights NJ with probable cause to believe that abuse and neglect has occurred or is occurring at Woodland. Access to the facility is necessary to conduct a full investigation of abuse and neglect.

85.     Given the serious nature of the reports of abuse and neglect, Disability Rights NJy has probable cause to believe that the health and safety of the youth at Woodland are in serious and immediate jeopardy.

86.     Defendant Woodland interfered with Plaintiff Disability Rights NJ's attempts to conduct site visits and interview residents at the facility.

87.     Defendants' refusal to allow Plaintiff Disability Rights NJ reasonable unaccompanied access to the facility violates the PAIR Act and its implementing regulations.

88.     Defendants' violation of the PAIR Act and its implementing regulations frustrates and interferes with Plaintiff Disability Rights NJ's federal mandate to protect people with disabilities in New Jersey; provide legal advocacy for people with disabilities; to conduct an investigation by Plaintiff Disability Rights NJ; and to determine whether corrective action should be taken.

89.     Defendants' violation of the PAIR Act and its implementing regulations frustrates the rights of individuals institutionalized at Woodland to have access to a meaningful and effective protection and advocacy system.

90.     Pursuant to 29 U.S.C. § 794e(f)(3), Plaintiff Disability Rights NJ is authorized to pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of such individuals

within New Jersey who are or who may be eligible for treatment, services, or habilitation.

91.    Plaintiff Disability Rights NJ is entitled to relief under 29 U.S.C. § 794e(f)(2).

## VI.          NECESSITY FOR INJUNCTIVE RELIEF

92.    Defendant has acted and continues to act in violation of the law as explained above. Plaintiff Disability Rights NJ and the individuals it is mandated to serve do not have an adequate remedy at law and will be irreparably harmed if Defendants are permitted to continue blocking Plaintiff Disability Rights NJ's access to investigate incidents of abuse and neglect at Woodland.

## VII.         PRAYER FOR RELIEF

WHEREFORE, Plaintiff Disability Rights NJ requests the following relief:

**A.** a declaratory judgment that Defendant has violated Plaintiff Disability Rights NJ's rights under the PAIMI Act, PADD Act, and PAIR Act.

**B.**   an injunction ordering Defendant to provide Plaintiff Disability Rights NJ with reasonable unaccompanied access to speak privately with individuals with disabilities at Woodland pursuant to its federal and state authority;

**C.** an injunction ordering Defendant to provide Plaintiff Disability Rights NJ with reasonable unaccompanied access to the facility at Woodland pursuant to its federal and state authority;

**D.** an award of costs pursuant to Fed. R. Civ. Proc. 54;

**E.** an award of reasonable attorney fees pursuant to 42 U.S.C. § 1988. and

**F.** any other relief that the Court deems appropriate.

Respectfully submitted,

/s/ Javier L. Merino
Javier L. Merino, Esq., Atty ID # 078112014
Andrew R. Wolf, Esq., Atty ID # 18621995
The Dann Law Firm, PC
1520 U.S. Highway 130, Suite 101
North Brunswick, NJ 08902
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Disability Rights of New Jersey*

## **Verification**

I, Gwen Orlowski, after being duly cautioned and sworn, verify, pursuant to 28 U.S.C. § 1746, under penalty of perjury that the foregoing is true and correct, that the allegations contained in the foregoing complaint and true and accurate to the best of my recollection.

Dated:   March 7, 2022

_____
Gwen Orlowski